LAWYERS BUILDING CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

TRINITY BUILDINGS CORPORATION OF NEW YORK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WHITEHALL IMPROVEMENT CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GEORGE A. FULLER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MATERIALS DELIVERY CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 81460, 81461, 81462, 81463, 81464.

Promulgated February 23, 1937.

*Allen G. Gartner, Esq.,* and *Edward I. Sproull, C. P. A.,* for the petitioners.

*Chester A. Gwinn, Esq.,* for the respondent.

OPINION.

LEECH: These consolidated proceedings involve income tax deficiencies proposed by respondent for the calendar year 1932 against the petitioners, as follows:

| | |
|---|---|
| Lawyers Building Corporation | $3,406.01 |
| Trinity Buildings Corporation of New York | 62,491.15 |
| Whitehall Improvement Corporation | 20,335.09 |
| George A. Fuller Co. | 32,249.90 |
| Materials Delivery Corporation | 66.34 |

The facts, which were stipulated, are briefly as follows: The petitioners, during the taxable year, were 5 affiliates in a group of 15 affiliated companies whose parent was the United States Realty & Improvement Co., a New Jersey corporation. A so-called consolidated return was filed by the latter corporation for the calendar year 1932, on behalf of itself and 13 of its affiliates, including the petitioners. Each of these 13 affiliates filed the prescribed form 1122. This form constituted the authorization and consent of the subsidiary corporations included in such return by which each subsidiary authorized the filing of such return by the parent, as agent, on its behalf, and consented to the provisions of the respondent's Regulations 78 governing consolidated returns of affiliated corporations. The Savoy-Plaza Corporation, one of the affiliates, did not join in making the so-called consolidated return, for the reason that the corporation had been adjudicated a bankrupt on December 1, 1932, and the trustee in bankruptcy, believing, upon advice of its legal counsel, that it was required to file a separate return on behalf of the bankrupt corporation for the year 1932, refused to execute form 1122 on behalf of that corporation, and filed a separate return for that corporation for that year.

During the 11-month period ended November 30, 1932, the Savoy-Plaza Corporation suffered a net operating loss of $1,500,837.29. On that date, the liabilities of the Savoy-Plaza Corporation exceeded its book assets by the sum of $3,917,070.61. The respondent determined the tax liability of each corporation, whose income was included in the so-called consolidated return filed, on a separate basis. The correctness of that action of the respondent is the sole issue in this proceeding.

The "privilege" of affiliated corporations to have their income taxes computed upon a consolidated basis exists only by virtue of the conditional grant of that "privilege" by Congress. And, as this Board said in *Smith Paper Co.*, 31 B. T. A. 28; affd., 78 Fed. (2d) 163; certiorari denied, 296 U. S. 627: "* * * petitioners, to enjoy its advantages, must bring themselves clearly within the specified conditions precedent to its grant. *Rock Island, A. & L. R. Co.* v. *United States*, 254 U. S. 141."

The Revenue Act of 1932 is controlling here. This statute, in so far as material at this point, is quoted in the margin.[1] By section 141 (a) of that act, such a privilege was extended to affiliated corporations. Under the authority granted by that statute, the respondent promulgated Regulations 78, the material provisions of which appear in the margin.[2] The·action of the respondent is

---

[1] SEC. 141. CONSOLIDATED RETURNS OF CORPORATIONS.

(a) PRIVILEGE TO FILE CONSOLIDATED RETURNS.—An affiliated group of corporations shall, subject to the provisions of this section, have the privilege of making a consolidated return for the taxable year in lieu of separate returns. The making of a consolidated return shall be upon the condition that all the corporations which have been members of the affiliated group at any time during the taxable year for which the return is made consent to all the regulations under subsection (b) (or, in case such regulations are not prescribed prior to the making of the return, then the regulations prescribed under section 141 (b) of the Revenue Act of 1928 in so far as not inconsistent with this Act) prescribed prior to the making of such return; and the making of a consolidated return shall be considered as such consent. In the case of a corporation which is a member of the affiliated group for a fractional part of the year the consolidated return shall include the income of such corporation for such part of the year as it is a member of the affiliated group.

(b) REGULATIONS.—The Commissioner, with the approval of the Secretary, shall prescribe such regulations as he may deem necessary in order that the tax liability of an affiliated group of corporations making a consolidated return and of each corporation in the group, both during and after the period of affiliation, may be determined, computed, assessed, collected, and adjusted in such manner as clearly to reflect the income and to prevent avoidance of tax liability.

(c) COMPUTATION AND PAYMENT OF TAX.—In any case in which a consolidated return is made the tax shall be determined, computed, assessed, collected and adjusted in accordance with the regulations under subsection (b) (or, in case such regulations are not prescribed prior to the making of the return, then the regulations prescribed under section 141 (b) of the Revenue Act of 1928 in so far as not inconsistent with this Act) prescribed prior to the date on which such return is made; except that for the taxable years 1932 and 1933 there shall be added to the rate of tax prescribed by sections 13 (a), 201 (b), and 204 (a), a rate of ¾ of 1 per centum.

(d) DEFINITION OF "AFFILIATED GROUP."—As used in this section an "affiliated group" means one or more chains of corporations connected through stock ownership with a common parent corporation if—

(1) At least 95 per centum of the stock of each of the corporations (except the common parent corporation) is owned directly by one or more of the other corporations; and

(2) The common parent corporation owns directly at least 95 per centum of the stock of at least one of the other corporations.

As used in this subsection the term "stock" does not include nonvoting stock which is limited and preferred as to dividends.

[2] ART.·12. Making Consolidated Return and Filing Other Forms.

(a) Consolidated Return Made by Common Parent.

A consolidated return shall be made on Form 1120 by the common parent corporation for the affiliated group. Such return shall be filed at the time and in the office of the collector of ˙the district prescribed for the filing of a seperate return by such corporation.

(b) Authorizations and Consents Filed by Subsidiaries.

Each subsidiary must prepare two duplicate originals of Form 1122, consenting to these regulations and authorizing the common parent corporation to make a consolidated return on its behalf for the taxable year and authorizing the common parent corporation (or, in the event of its failure, the Commissioner or the collector) to make a consolidated return on its behalf (as long as it remains a member of the group), for each year thereafter for which, under article 11 (a), the making of a consolidated return is required. One of such forms shall be attached to the consolidated return, as a part thereof; and the other shall be filed, at or before the time the consolidated return is filed, in the office of the collector for the district prescribed for the filing of a separate return by such subsidiary. No such consent can be withdrawn or revoked at any time after the consolidated· return is filed.

\* \* \* \* \* \* \*

premised particularly upon article 18, which provides substantially, for present purposes, that, if there has been a failure to include in the consolidated return the income of any subsidiary, or a failure to file any of the forms required by these regulations, the tax liability of each member of the affiliated group shall be determined upon the basis of separate returns. Clearly, the petitioners were bound by these regulations since they filed form 1122, which was their formal consent to be so bound. Here, the income of the Savoy-Plaza Corporation was not included in the return for that year filed by the remaining members of the affiliated group nor did it file form 1122, consenting to be bound by Regulations 78 and authorizing the parent corporation to make a consolidated return on its behalf for the year in question, the filing of which, under Regulations 78, was made a condition precedent to the privilege of having the income taxes of the affiliated group computed upon a consolidated basis.

It may well be true, as argued by petitioners, that the bankruptcy of the Savoy-Plaza Corporation, which occurred on December 1, 1932, left that corporation thereafter as a mere "shell" and that such "shell" could not, in fact, be affiliated with the remaining members of the affiliation. See *Houghton & Dutton Co.*, 26 B. T. A. 52; *Prosperity Co.*, 27 B. T. A. 28; *H. Liebes & Co.*, 23 B. T. A. 787. However, obviously, at least for the period in 1932 preceding December 1, the date of the bankruptcy of the Savoy-Plaza Corporation, that corporation was a member of the affiliated group within the provisions of section 141 (d), *supra*. That fact brings the Savoy-Plaza Corporation within the requirements of section 141, *supra*, just as effectively as though that undisputed affiliation continued throughout the year. This is so since section 141 (a), *supra*, provides that "The making of a consolidated return shall be upon the condition that all the corporations which have been members of the affiliated group at any time during the taxable year for which the return is made consent to all the regulations under subsection (b) * * *; and the making of a consolidated return shall be considered as such consent."

Petitioners do not question the validity of the regulations. Nor do they deny, at least very emphatically, that they are controlled by

---

ART. 18. **Failure to Comply with Regulations.**

(a) *Exclusion of a Subsidiary from Consolidated Return.*

If there has been a failure to include in the consolidated return the income of any subsidiary, or a failure to file any of the forms required by these regulations, notice thereof shall be given the common parent corporation by the Commissioner, and the tax liability of each member of the affiliated group shall be determined on the basis of separate returns unless such income is included or such forms filed within the period prescribed in such notice, or any extension thereof, or unless under article 11 a consolidated return is required for such year.

    *       *       *       *       *       *       *

those regulations. The burden of their argument apparently is that the regulations quoted do not cover the situation presented here, where an affiliate became bankrupt during the taxable year. They argue that the respondent has construed these regulations in their effect on both the situation where the parent of an affiliated group becomes bankrupt during the taxable year (see G. C. M. 12207, C. B. XII–2) and where the subsidiary affiliate became bankrupt during such year (see G. C. M. 12208, C. B. XII–2).

In the first General Counsel's memorandum mentioned, it was ruled that the trustee of the parent corporate bankrupt could file a consolidated return providing the requirements of Regulations 78 were met. In the second memorandum the ruling was:

> Where a group of corporations is affiliated within the meaning of section 141 (d) of the Revenue Act of 1932, and a subsidiary company is in the hands of a trustee in bankruptcy or a receiver, who is operating the property or business of the company and is, therefore, required to make returns for the corporation under section 52 (a) of that Act, the income of such a subsidiary company may be included in a consolidated return for the affiliated group, provided the trustee in bankruptcy or the receiver, as the case may be, executes Form 1122 and consents to the provisions of Regulations 78 governing the making of consolidated returns.

Petitioners contend that in these two memoranda the respondent has construed the regulations covering the case here to mean that the trustee in bankruptcy for the Savoy-Plaza Corporation had an absolute right to file a separate return covering the year in controversy and that the filing of such a return complied with the mandatory requirements of the controlling Revenue Act of 1928, section 52 (a) and Regulations 77, article 392, construing the same, both of which, so far as are here material, are quoted in the margin.[3] That is to say, petitioners' argument is that, under the regulations governing the right of petitioners to have their income taxes for

---

[3] SEC. 52. CORPORATION RETURNS.

(a) *Requirement.*—Every corporation subject to taxation under this title shall make a return, stating specifically the items of. its gross income and the deductions and credits allowed by this title. The return shall be sworn to by the president, vice president, or other principal officer and by the treasurer or assistant treasurer. In cases where receivers, trustees in bankruptcy, or assignees are operating the property or business of corporations, such receivers, trustees, or assignees shall make returns for such corporations in the same manner and form as corporations are required to make returns. Any tax due on the basis of such returns made by receivers, trustees, or assignees shall be collected in the same manner as if collected from the corporations of whose business or property they have custody and control.

\*　　　\*　　　\*　　　\*　　　\*　　　\*

ART. 392. *Returns by receivers.*—Receivers, trustees in dissolution, trustees in bankruptcy, and assignees, operating the property or business of corporations, must make returns of income of such corporations on Form 1120. Notwithstanding that the powers and functions of a corporation are suspended and that the property and business are for the time being in the custody of the receiver, trustee, or assignee, subject to the order of the court, such receiver, trustee, or assignee stands in the place of the corporate officers and is required to perform all the duties and assume all the liabilities which would devolve upon the officers of the corporation were they in control. \*　\*　\*

1932 computed on a consolidated basis, as such regulation is construed by the respondent, the trustee in bankruptcy for the Savoy-Plaza Corporation was mandatorily required or, at least was permitted to file a separate return for the bankrupt corporation for that year without affecting the right of the other members of the affiliation to have their income taxes computed on a consolidated basis.

Aside from the effect of such a construction of this regulation by the respondent, we disagree with the petitioners' construction of the meaning of the two General Counsel's memoranda, *supra*.

Clearly, under section 52 (a), *supra*, which is a Federal statute as is the Bankruptcy Act, the trustee in bankruptcy for the Savoy-Plaza Corporation was required to make the income tax return for that corporation for 1932 "in the same manner and form as corporations are required to make." The respondent so construed that section in his appropriate Regulations 77, article 392, included in the margin.

In our judgment, the only effect of General Counsel's Memorandum 12208, *supra*, was to clarify the situation in providing that where a subsidiary affiliate became bankrupt during the taxable year, the trustee in bankruptcy of that affiliate *could* do as the corporation would have done had bankruptcy not intervened, namely, file a separate return or join in a consolidated return for the affiliated group provided it formally consented to the provisions of Regulations 78 controlling the filing of consolidated returns.

It may well be that the trustee in bankruptcy for the Savoy-Plaza Corporation was advised and believed that it was required by law to file a separate return for the year 1932 and was similarly prevented from executing form 1122 authorizing the parent to file a consolidated return on its behalf and consenting to be bound by Regulations 78 applying to consolidated returns. But a mistake of law does not excuse. *Fletcher American National Bank*, 33 B. T. A. 453. This record does not disclose that the Federal District Court having jurisdiction of the bankruptcy proceedings involving the Savoy-Plaza Corporation denied the trustee in bankruptcy of that corporation permission to file form 1122 or join in the so-called consolidated return of the affiliates of that corporation. It is not revealed that the trustee asked for such permission. In view of the fact that this record shows that no liability would, in fact, have been assumed by the trustee, by the execution of that form or the joining in the so-called consolidated return as filed, it may well be doubted that such permission would have been denied.

In any event, the Savoy-Plaza Corporation was a member of the affiliated group with petitioners during 1932, at least for the period preceding December 1 of that year. The other members of that group, including petitioners, consented to be bound by the regula-

tions governing the filing of consolidated returns. The so-called consolidated return of the affiliated group failed to include the income of the Savoy-Plaza Corporation for that year, and the trustee in bankruptcy for that corporation failed to file form 1122 consenting to be bound by Regulations 78 and authorizing the parent company of the affiliated group to file a consolidated return on its behalf, as provided by Regulations 78. This failure to comply with those regulations made mandatory the computation by the respondent of the income taxes for the year 1932 of each member of the affiliated group on a separate basis. The deficiencies here resulted from such computation. They are affirmed.

Effect will be given to the stipulated adjustments in the settlement under Rule 50.

Reviewed by the Board.

*Decision will be entered under Rule 50.*